**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| MARGARET C. DANIELS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **CIVIL ACTION NO. 1:07cv838-TFM** |
| | ) [wo] |
| MICHAEL J. ASTRUE, | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Following administrative denial of her application for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401 *et seq*., Margaret C. Daniels ("Daniels") received a hearing before an administrative law judge ("ALJ") who rendered an unfavorable decision. When the Appeals Council rejected review, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner"). Judicial review proceeds pursuant to 42 U.S.C. §§ 405(g) , 1383(c)(3), and 28 U.S.C. § 636 (c), and for reasons herein explained, the court REMANDS THE COMMISSIONER'S decision.

## I. STANDARD OF REVIEW

Judicial review of the Commissioner's decision to deny benefits is limited. The court cannot conduct a *de novo* review or substitute its own judgment for that of the Commissioner. *Walden v. Schweiker*, 672 F.2d 835 (11th Cir. 1982). This court must find the

Commissioner's decision conclusive "if it is supported by substantial evidence and the correct legal standards were applied." *Kelley v. Apfel*, 185 F. 3d 1211, 1213 (11th Cir. 1999), citing *Graham v. Apfel*, 129 F. 3d 1420, 1422 (11th Cir. 1997).

Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994).

## II. ADMINISTRATIVE FINDINGS

Daniels, age 45 at the time of the hearing, completed two years of junior college.

Daniels' past work history was a sales representative for insurance companies. She did not engage in substantial gainful work activity between the alleged onset date of January 1, 2004, and the date of decision. Her disability application lists back pain as the reason for her disability. The ALJ found Daniels was severely impaired by chronic low back pain syndrome secondary to degenerative disc disease. The ALJ concluded Daniels did not have any impairment or combination of impairments that meet or equal in severity any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Daniels' testified before the ALJ that her prescription medications for back pain made her drowsy enough to fall asleep.[1] Although Daniels admitted she did not take the pain medication every day, her testimony made clear she needed to sleep whenever she did take it.[2] The medical expert disagreed with the functional capacity opinion of Daniels' treating physician.[3] The expert did, however, find "very credible" Daniels' testimony concerning her attempts to rearrange kitchen utensils to lessen her pain when cooking.[4] The expert also disagreed with the severity of medicinal side effects indicated by the treating physician, but testified Daniels would be "lubricated" and "most people definitely function slow with it."[5] The ALJ consulted a vocational expert (VE) during the hearing, who qualified her opinion

---

[1]R. at 172, 190.

[2]R. at 190.

[3]R. at 179-80.

[4]R. at 181, 184.

[5]R. at 179, 191.

that a person with Daniels' limitations could work as an office clerk, cashier, or small products, assembler upon the condition that "the drowsiness from the medication was not debilitating."[6]

The ALJ found Daniels' allegations of pain and functional limitations were not totally credible. He found she retained the residual functional capacity ("RFC") for light work with nonexertional limitations. The RFC finding specifically ruled Daniels is "not capable of sustaining a high level of attention and concentration constantly due to drowsiness secondary to pain medication, which she takes intermittently for unpredictable periods of time."[7] The ALJ determined Daniels could not perform her past relevant work as an insurance sales representative. The ALJ relied upon testimony from the VE to determine a person of Daniels' age, education, past relevant work experience, and residual functional capacity was not disabled, but was in fact able to work as a routine office clerk, cashier, or small products assembler and inspector. Accordingly, the ALJ concluded Daniels is not disabled.[8]

## III. ISSUES

Daniels raises four issues for judicial review:

1. Whether the ALJ incorrectly held there were significant jobs existing in the national economy that Daniels could perform.

---

[6]R. at 195.

[7]R. at 18.

[8]R. at 32-33. The ALJ's disability analysis followed the five-step sequential evaluation process set forth in 20 C.F.R. §404.1520 and summarized in *Phillips v. Barnhart*, 357 F. 3d 1232 (11th Cir. 2004).

2. Whether the ALJ's RFC finding lacks the support of substantial evidence.

3. Whether the ALJ erred by failing to adequately develop the record.

4. Whether the ALJ erred by failing to correctly evaluate the medical opinions expressed by Daniels' treating physician.

## IV. DISCUSSION

**The record does not support the ALJ's finding that Daniels is able to perform specified occupations.**

Daniels argues the ALJ erred when he found her able to perform the occupations listed by the VE during the administrative hearing, despite the drowsiness she suffers from prescription medication. The Commissioner responds the ALJ correctly incorporated Daniels' drowsiness into the hypothetical and she is able to perform the occupations listed by the ALJ.

Daniels stated she took the prescribed drugs only on the "worst days," which sometimes occurred once a week or not at all during a week.[9] The medical expert reviewed Daniels' prescribed medications with her, and acknowledged drowsiness was a noted side effect of the medications.[10] The medical expert also confirmed Daniels' medication would make her sleepy in a place of business.[11] The ALJ set forth a hypothetical for the VE which included occasional use of pain medication that would make Daniels drowsy and less

---

[9]R. at 188, 190.

[10]R. at 177; 179, 191.

[11]R. at 191.

attentive on an unpredictable basis during the course of a week, or not at all.[12] The hypothetical specified Daniels would "probably need jobs that didn't demand constant, high levels of attention and concentration."[13] The VE opined Daniels would have difficulty performing her past relevant work in insurance sales, and stated she could perform entry level unskilled work "as long as the drowsiness from the medication was not debilitating."[14] The VE continued to list office clerk, cashier, and small products assembler/inspector as occupations within Daniels' ability, absent drowsiness.[15] The ALJ accepted the VE's opinion, and found Daniels able to perform the jobs listed during the hearing.[16]

Daniels' consistent and straightforward testimony is that her medications make her sleepy. The medical expert agreed that Daniels' medication would make her drowsy. The testimony concerning this side effect was credible enough for the ALJ to factor drowsiness into the hypothetical for the VE. Accordingly, the hypothetical contained limitations indicated by testimony from Daniels and the medical expert. The VE limited her responses to situations where the drowsiness was not debilitating. Despite the limitations imposed by the VE, the ALJ found Daniels able to perform the occupations listed by the VE.[17]

---

[12]R. at 193.

[13]R. at 193.

[14]R. at 194-95.

[15]R. at 195-96.

[16]R. at 17.

[17]R. at 17.

"Debilitate" is defined as "to weaken" or "to impair the strength of."[18] The Court concludes Daniels' need to sleep after taking her pain medication as an indicator of "debilitating" drowsiness, and the limitation imposed by the VE is thus applicable to Daniels. The contradiction poses a dilemma which the Court cannot reconcile without further agency review. The Court notes Daniels' testimony about her drowsiness is credible, and supported by medical evidence. Daniels testified she did not take the medications every day, but only on the "worst" days, perhaps once a week. Her candor is striking inasmuch as many disability claimants complain of constant, intense pain on a daily basis which renders all activity impossible. The medical expert testified drowsiness is a side effect of Daniels' medication, and remarked without prompting that Daniels' testimony about rearranging her kitchen to accommodate her pain was credible. The Court stresses the issue of Daniels' drowsiness is separate from the ALJ's credibility findings as to Daniels' pain and the alleged limitations arising therefrom.[19] The limitation imposed by the VE related solely to Daniels' reaction to prescribed medication, and the inconsistencies in the record on this issue form the basis for this opinion.

Daniels cites Eleventh Circuit precedent for the proposition that, though a claimant could probably perform on a part-time basis, the test for disability at Step Five of the disability evaluation is the ability to "perform work on a 'regular and continuing basis,'" *i.e.*,

---

[18]Webster's Third New International Dictionary 582 (1986).

[19]*See* R. at 15-16.

"8 hours a day, for 5 days a week, or an equivalent work schedule." *Kelly v. Apfel*, 185 F.3d 1211, 1214 (11th Cir. 1999). The Court finds the record places Daniels within the category of claimants who may "be entitled to benefits even though capable of working on a part-time basis." *Kelly, id*. at 1215.

In light of the undefined nature of "debilitating" drowsiness, and the ALJ's conclusion that Daniels is able to perform the occupations listed in response to the first hypothetical, the Court remands this case for clarification as to the Daniels' ability to perform the jobs listed by the VE.

## V. CONCLUSION

Pursuant to the findings and conclusions detailed in this *Memorandum Opinion*, the court concludes that the case should be remanded for clarification of the ALJ's findings as to Daniels' **actual RFC.** It is, therefore, **ORDERED** that the decision of the Commissioner is **REVERSED and REMANDED.** A separate order is entered herewith.

Done this 14th day of May, 2008.

/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE

A copy of this checklist is available at the website for the USCA, 11th Circuit at www.ca11.uscourts.gov
Effective on April 9, 2006, the new fee to file an appeal will increase from $255.00 to $455.00.

# CIVIL APPEALS JURISDICTION CHECKLIST

1. **Appealable Orders:** Courts of Appeals have jurisdiction conferred and strictly limited by statute:

(a) **Appeals from final orders pursuant to 28 U.S.C. § 1291:** Only final orders and judgments of district courts, or final orders of bankruptcy courts which have been appealed to and fully resolved by a district court under 28 U.S.C.§ 158, generally are appealable. A final decision is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Pitney Bowes, Inc. v. Mestre, 701 F.2d 1 365, 1 368 ( 11th Ci r. 1 983). A magistrate judge's report and recommendation is not final and appealable until judgment thereon is entered by a district court judge. 28 U.S.C. § 636(c).

(b) **In cases involving multiple parties or multiple claims,** a judgment as to fewer than all parties or all claims is not a final, appealable decision unless the district court has certified the judgment for immediate review under Fed.R.Civ.P. 54(b). Williams v. Bishop, 732 F.2d 885, 885- 86 (11th Cir. 1984). A judg ment which resolves all issues except matters, such as attorneys' fees and costs, that are collateral to the merits, is immediately appealable. Budinich v. Becton Dickinson & Co., 486 U.S.196, 201, 108 S.Ct. 1717, 1721-22, 100 L .Ed.2d 178 (1988); LaChance v. Duffy's Draft House, Inc., 146 F.3d 832, 837 (11th Cir. 1998).

(c) **Appeals pursuant to 28 U.S.C. § 1292(a):** Appeals are permitted from orders "granting, continuing, modifying, refusing or dissolving injunctions or refusing to dissolve or modify injunctions . . ." and from "[i]nterlocutory decrees . . . determining the rights and liabilities of parties to admiralty cases in which appeals from final decrees are allowed." Interlocutory appeals from orders denying temporary restraining orders are not permitted.

(d) **Appeals pursuant to 28 U.S.C. § 1292(b) and Fed.R.App.P. 5**: The certification specified in 28 U.S.C. § 1292(b) must be obtained before a petition for permission to appeal is filed in the Court of Appeals. The district court's denial of a motion for certification is not itself appealable.

(e) **Appeals pursuant to judicially created exceptions to the finality rule:** Limited exceptions are discussed in cases including, but not limited to: Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546, 69S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949); Atlantic Fed. Sav. & Loan Ass'n v. Blythe Eastman Paine Webber, Inc., 890 F.2d 371, 376 (11th Cir. 1989); Gillespie v. United States Steel Corp., 379 U.S. 148, 157, 85 S.Ct. 308, 312, 13 L.Ed.2d 199 (1964).

Rev.: 4/04

**2.** **Time for Filing**: The timely filing of a notice of appeal is mandatory and jurisdictional. Rinaldo v. Corbett, 256 F.3d 1276, 1278 (11th Cir. 2001). In civil cases, Fed.R.App.P. 4(a) and (c) set the following time limits:

(a) **Fed.R.App.P. 4(a)(1):** A notice of appeal in compliance with the requirements set forth in Fed.R.App.P. 3 must be filed in the district court within 30 days after the entry of the order or judgment appealed from. However, if the United States or an officer or agency thereof is a party, the notice of appeal must be filed in the district court within 60 days after such entry. **THE NOTICE MUST BE RECEIVED AND FILED IN THE DISTRICT COURT NO LATER THAN THE LAST DAY OF THE APPEAL PERIOD – no additional days are provided for mailing.** Special filing provisions for inmates are discussed below.

(b) **Fed.R.App.P. 4(a)(3):** "If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period ends later."

(c) **Fed.R.App.P. 4(a)(4):** If any party makes a timely motion in the district court under the Federal Rules of Civil Procedure of a type specified in this rule, the time for appeal for all parties runs from the date of entry of the order disposing of the last such timely filed motion.

(d) **Fed.R.App.P. 4(a)(5) and 4(a)(6):** Under certain limited circumstances, the district court may extend the time to file a notice of appeal. Under Rule 4(a)(5), the time may be extended if a motion for an extension is filed within 30 days after expiration of the time otherwise provided to file a notice of appeal, upon a showing of excusable neglect or good cause. Under Rule 4(a)(6), the time may be extended if the district court finds upon motion that a party did not timely receive notice of the entry of the judgment or order, and that no party would be prejudiced by an extension.

(e) **Fed.R.App.P. 4(c):** If an inmate confined to an institution files a notice of appeal in either a civil case or a criminal case, the notice of appeal is timely if it is deposited in the institution's internal mail system on or before the last day for filing. Timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

**3.** **Format of the notice of appeal:** Form 1, Appendix of Forms to the Federal Rules of Appellate Procedure, is a suitable format. See also Fed.R.App.P. 3(c). A pro se notice of appeal must be signed by the appellant.

**4.** **Effect of a notice of appeal:** A district court loses jurisdiction (authority) to act after the filing of a timely notice of appeal, except for actions in aid of appellate jurisdiction or to rule on a timely motion of the type specified in Fed.R.App.P. 4(a)(4).