IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| MARGARET C. DANIELS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 1:07cv838-TFM |
| | )           [wo] |
| MICHAEL J. ASTRUE, | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Following administrative denial of her application for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401 *et seq.*, Margaret C. Daniels ("Daniels") received a hearing before an administrative law judge ("ALJ") who rendered an unfavorable decision. When the Appeals Council rejected review, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner"). Judicial review proceeds pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and 28 U.S.C. § 636 (c), and for reasons herein explained, the court REMANDS THE COMMISSIONER'S decision.

**I.   STANDARD OF REVIEW**

Judicial review of the Commissioner's decision to deny benefits is limited. The court cannot conduct a *de novo* review or substitute its own judgment for that of the Commissioner. *Walden v. Schweiker*, 672 F.2d 835 (11th Cir. 1982). This court must find the

Commissioner's decision conclusive "if it is supported by substantial evidence and the correct legal standards were applied." *Kelley v. Apfel*, 185 F. 3d 1211, 1213 (11th Cir. 1999), citing *Graham v. Apfel*, 129 F. 3d 1420, 1422 (11th Cir. 1997).

Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994).

## II. ADMINISTRATIVE FINDINGS

Daniels, age 45 at the time of the hearing, completed two years of junior college.

Daniels' past work history was a sales representative for insurance companies. She did not engage in substantial gainful work activity between the alleged onset date of January 1, 2004, and the date of decision. Her disability application lists back pain as the reason for her disability. The ALJ found Daniels was severely impaired by chronic low back pain syndrome secondary to degenerative disc disease. The ALJ concluded Daniels did not have any impairment or combination of impairments that meet or equal in severity any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Daniels' testified before the ALJ that her prescription medications for back pain made her drowsy enough to fall asleep.[1] Although Daniels admitted she did not take the pain medication every day, her testimony made clear she needed to sleep whenever she did take it.[2] The medical expert disagreed with the functional capacity opinion of Daniels' treating physician.[3] The expert did, however, find "very credible" Daniels' testimony concerning her attempts to rearrange kitchen utensils to lessen her pain when cooking.[4] The expert also disagreed with the severity of medicinal side effects indicated by the treating physician, but testified Daniels would be "lubricated" and "most people definitely function slow with it."[5] The ALJ consulted a vocational expert (VE) during the hearing, who qualified her opinion

---

[1] R. at 172, 190.

[2] R. at 190.

[3] R. at 179-80.

[4] R. at 181, 184.

[5] R. at 179, 191.

that a person with Daniels' limitations could work as an office clerk, cashier, or small products, assembler upon the condition that "the drowsiness from the medication was not debilitating."[6]

The ALJ found Daniels' allegations of pain and functional limitations were not totally credible. He found she retained the residual functional capacity ("RFC") for light work with nonexertional limitations. The RFC finding specifically ruled Daniels is "not capable of sustaining a high level of attention and concentration constantly due to drowsiness secondary to pain medication, which she takes intermittently for unpredictable periods of time."[7] The ALJ determined Daniels could not perform her past relevant work as an insurance sales representative. The ALJ relied upon testimony from the VE to determine a person of Daniels' age, education, past relevant work experience, and residual functional capacity was not disabled, but was in fact able to work as a routine office clerk, cashier, or small products assembler and inspector. Accordingly, the ALJ concluded Daniels is not disabled.[8]

### III.  ISSUES

Daniels raises four issues for judicial review:

1. Whether the ALJ incorrectly held there were significant jobs existing in the national economy that Daniels could perform.

---

[6] R. at 195.

[7] R. at 18.

[8] R. at 32-33. The ALJ's disability analysis followed the five-step sequential evaluation process set forth in 20 C.F.R. §404.1520 and summarized in *Phillips v. Barnhart*, 357 F. 3d 1232 (11th Cir. 2004).

2.      Whether the ALJ's RFC finding lacks the support of substantial evidence.

3.      Whether the ALJ erred by failing to adequately develop the record.

4.      Whether the ALJ erred by failing to correctly evaluate the medical opinions expressed by Daniels' treating physician.

## IV.  DISCUSSION

**<u>The record does not support the ALJ's finding that Daniels is able to perform specified occupations.</u>**

Daniels argues the ALJ erred when he found her able to perform the occupations listed by the VE during the administrative hearing, despite the drowsiness she suffers from prescription medication. The Commissioner responds the ALJ correctly incorporated Daniels' drowsiness into the hypothetical and she is able to perform the occupations listed by the ALJ.

Daniels stated she took the prescribed drugs only on the "worst days," which sometimes occurred once a week or not at all during a week.[9] The medical expert reviewed Daniels' prescribed medications with her, and acknowledged drowsiness was a noted side effect of the medications.[10] The medical expert also confirmed Daniels' medication would make her sleepy in a place of business.[11] The ALJ set forth a hypothetical for the VE which included occasional use of pain medication that would make Daniels drowsy and less

---

[9] R. at 188, 190.

[10] R. at 177; 179, 191.

[11] R. at 191.

attentive on an unpredictable basis during the course of a week, or not at all.[12] The hypothetical specified Daniels would "probably need jobs that didn't demand constant, high levels of attention and concentration."[13] The VE opined Daniels would have difficulty performing her past relevant work in insurance sales, and stated she could perform entry level unskilled work "as long as the drowsiness from the medication was not debilitating."[14] The VE continued to list office clerk, cashier, and small products assembler/inspector as occupations within Daniels' ability, absent drowsiness.[15] The ALJ accepted the VE's opinion, and found Daniels able to perform the jobs listed during the hearing.[16]

Daniels' consistent and straightforward testimony is that her medications make her sleepy. The medical expert agreed that Daniels' medication would make her drowsy. The testimony concerning this side effect was credible enough for the ALJ to factor drowsiness into the hypothetical for the VE. Accordingly, the hypothetical contained limitations indicated by testimony from Daniels and the medical expert. The VE limited her responses to situations where the drowsiness was not debilitating. Despite the limitations imposed by the VE, the ALJ found Daniels able to perform the occupations listed by the VE.[17]

---

[12]R. at 193.

[13]R. at 193.

[14]R. at 194-95.

[15]R. at 195-96.

[16]R. at 17.

[17]R. at 17.

"Debilitate" is defined as "to weaken" or "to impair the strength of."[18] The Court concludes Daniels' need to sleep after taking her pain medication as an indicator of "debilitating" drowsiness, and the limitation imposed by the VE is thus applicable to Daniels. The contradiction poses a dilemma which the Court cannot reconcile without further agency review. The Court notes Daniels' testimony about her drowsiness is credible, and supported by medical evidence. Daniels testified she did not take the medications every day, but only on the "worst" days, perhaps once a week. Her candor is striking inasmuch as many disability claimants complain of constant, intense pain on a daily basis which renders all activity impossible. The medical expert testified drowsiness is a side effect of Daniels' medication, and remarked without prompting that Daniels' testimony about rearranging her kitchen to accommodate her pain was credible. The Court stresses the issue of Daniels' drowsiness is separate from the ALJ's credibility findings as to Daniels' pain and the alleged limitations arising therefrom.[19] The limitation imposed by the VE related solely to Daniels' reaction to prescribed medication, and the inconsistencies in the record on this issue form the basis for this opinion.

Daniels cites Eleventh Circuit precedent for the proposition that, though a claimant could probably perform on a part-time basis, the test for disability at Step Five of the disability evaluation is the ability to "perform work on a 'regular and continuing basis,'" *i.e.*,

---

[18] Webster's Third New International Dictionary 582 (1986).

[19] *See* R. at 15-16.

7

"8 hours a day, for 5 days a week, or an equivalent work schedule." *Kelly v. Apfel*, 185 F.3d 1211, 1214 (11th Cir. 1999). The Court finds the record places Daniels within the category of claimants who may "be entitled to benefits even though capable of working on a part-time basis." *Kelly, id*. at 1215.

In light of the undefined nature of "debilitating" drowsiness, and the ALJ's conclusion that Daniels is able to perform the occupations listed in response to the first hypothetical, the Court remands this case for clarification as to the Daniels' ability to perform the jobs listed by the VE.

## V. CONCLUSION

Pursuant to the findings and conclusions detailed in this *Memorandum Opinion*, the court concludes that the case should be remanded for clarification of the ALJ's findings as to Daniels' **actual RFC.** It is, therefore, **ORDERED** that the decision of the Commissioner is **REVERSED and REMANDED.** A separate order is entered herewith.

Done this 14th day of May, 2008.

/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE